# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| PETE VILLARREAL, JOEY VILLARREAL, ARNULFO ALEJO, JOSE LUIS GOMEZ, ANGEL R. BUNDALI, MARVIN APLICANO, and BOBBY LARIOS,<br><br>*Plaintiffs*,<br><br>v.<br><br>SAMARIPA OILFIELD SERVS., LLC and AMY SAMARIPA,<br><br>*Defendants*. | CIVIL ACTION 4:13-CV-02662 |

## OPINION ON SUMMARY JUDGMENT

Plaintiffs' motion for summary judgment (Dkt. 22) and plaintiff Bobby Larios' motion for default judgment are before the court today. (Dkt. 24). Following a review of the briefs and record, the court grants plaintiffs' motion for summary judgment and denies Mr. Larios' motion for default judgment.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

This Fair Labor Standards Act case is before the court on consent of the parties. (*See* Dkts. 13, 14). Plaintiffs are seven former employees of defendant Samaripa Oilfield Servs., LLC, which they allege is owned by Amy Samaripa. Plaintiffs allege that they each worked for various periods of time from 2011-2013, paid on an hourly basis[1] as manual laborers and drivers for Samaripa. (Dkt. 22, at 1-9). Plaintiffs also allege that they were entitled to overtime pay and received none. (Dkt. 22, at 1-9).

---

[1] The court will discuss in greater depth the individual circumstances of each plaintiff's employment in the explanation of damages below.

Plaintiffs, except for plaintiff Bobby Larios, filed their complaint on September 11, 2013. (Dkt. 1). Samaripa answered on November 5, 2013. (Dkt. 6). Plaintiffs then filed an amended complaint to add Mr. Larios and the now-dismissed Richard Holdman[2] as plaintiffs. (Dkt. 17). On October 31, 2014, all plaintiffs moved for summary judgment on their claims. (Dkt. 22). Because he had been added with the first amended complaint, which went unanswered by Samaripa, Mr. Larios also moved separately for default judgment. (Dkt. 24, at 1-2). Samaripa did not respond to either of the two motions pending before the court today.

## ANALYSIS

The court will consider separately plaintiffs' motions for summary judgment and default judgment.

1. *Plaintiffs' Motion for Summary Judgment*

"Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); FED.R.CIV.P. 56(c). Courts resolve genuine factual disputes in favor of the nonmovant by denying summary judgment, but there must be an "actual controversy," meaning "both parties have submitted evidence of contradictory facts." *Laughlin v. Olszewski*, 102 F.3d 190, 192 (5th Cir. 1996).

---

[2] Mr. Holdman was added as a plaintiff in the first amended complaint. (Dkt. 17). While he remained a party to the case at the time plaintiffs moved for summary judgment, Mr. Holdman has since been dismissed without prejudice and no longer takes part in that motion. (*See* Dkt. 27).

2

The FLSA requires employers to pay covered employees extra compensation of at least one and one-half times the employee's regular rate of pay for each hour worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). The United States Court of Appeals for the Fifth Circuit interprets Section 207(a)(1) to require a plaintiff employee to show the following: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due."[3] *Johnson v. Heckmann Water Resources (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). The court will turn now to each of these four elements.

A.  *Employer-Employee Relationship*

Based on the record, affidavits, and plaintiffs' motion, the required employer-employee relationship existed between the plaintiffs as employees and defendants as employer. The definition of "employee" under the FLSA is a broad one. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992). The "economic reality" of the relationship, not merely what an employee is called, determines whether the necessary relationship exists. *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008). A plaintiff must show that "as a matter of economic reality, the worker is economically dependent upon the alleged employer" and not "instead in business for himself." *Id.* Courts consider five factors

---

[3] The Fifth Circuit goes on to state that after the employee successfully makes out a prima facie case, the employer may raise certain challenges to it. *Heckmann Water*, 758 F.3d at 630. The court need not go into this part of the analysis, however, as Samaripa failed to respond to the present motions and therefore raises no such challenges.

3

in making this determination:

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.

*Id.* No single factor is determinative, but they are together a tool to "gauge the *economic dependence* of the alleged employee" on the alleged employer. *Id.*

The record shows that Samaripa exercised substantial control over plaintiffs. Plaintiffs each attest in their affidavits that Samaripa Oilfield "directed when, where and how I performed my work." (Dkt. 22). The company prohibited plaintiffs from hiring employees to assist in the work, set work days and hours, and provided tools and vehicles for plaintiffs to use. (Dkt. 22). Pete Villarreal's second declaration also illustrates the role that Amy Samaripa, in addition to her company, played as employer. (Dkt. 22-11). Pete Villarreal states that Ms. Samaripa determined the manner in which and rate at which he was paid for his work, that Ms. Samaripa was the sole owner of her firm, and that she controlled personnel matters through sole "hiring and firing" power. (Dkt. 22-11, at 1); *see Hopkins*, 545 F.3d at 343 (control of "hiring, firing, assignment, and promotion" strong indicator of employer position). Ms. Samaripa also "was solely responsible for directing [plaintiffs] where to go to work a job." (Dkt. 22-11, at 1). These facts combine to show that Samaripa exercised substantial control over plaintiffs.

The record does not indicate that plaintiffs made any sort of "investment" in the company. Indeed, Mr. Larios declared that Ms. Samaripa owned the firm entirely. (Dkt. 22-11, at 1). Further, there was no opportunity for profit or loss beyond the wages Ms. Samaripa and the company set and paid. (*See* Dkts. 22-1, at 1; 22-11, at 1). Plaintiffs–manual laborers

4

and drivers–possessed no particular special skill that would make them independent contractors rather than employees. *See Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 332-33 (5th Cir. 1993) (specialist, such as a pipe welder, more likely found to be non-employee). Defendants have provided no information to contradict plaintiffs' affidavits and asserted facts.

The fifth *Hopkins* factor does cut against plaintiffs: their work relationship with Samaripa was fairly impermanent. Several of the plaintiffs worked for ten to twelve months. (Dkt. 22). Arnulfo Alejo worked for "52 weeks" over the course of about sixteen months, with a "three month break in employment" during that period. (Dkt. 22-6, at 2). Jose Luis Gomez's employment was similarly fragmented. (*See* Dkt. 22-7, at 2). Angel Bundali worked for defendants for only four months. (Dkt. 22-8, at 2). Marvin Aplicano, on the other hand, worked for Samaripa for 19 months, and Bobby Larios for 15 months. (Dkts. 22-9, at 2; 22-10, at 2). These relationships with Samaripa are far less permanent than the "several years" the *Hopkins* plaintiffs spent as salespersons for their employer. *See Hopkins*, 545 F.3d at 345-46. Yet the relationship here is not so utterly impermanent that plaintiffs moved job to job for a few days at a time to assist with only part of a project. *See Sunland Const.*, 998 F.2d at 332 (welder specialists not employees when they participated in only a short, focused period of a much larger construction project). Further, the Fifth Circuit has also found that even seasonal workers can be considered employees despite the brevity of their engagement with the employer. *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1053-54 (5th Cir. 1987).

On the balance of the five *Hopkins* factors, the court determines for the foregoing reasons that Samaripa Oilfield and Ms. Samaripa each acted as employers of plaintiffs, and

that plaintiffs have satisfied the first element of their FLSA claim.

## B. Activities Covered by the FLSA

To recover lost overtime pay, a plaintiff employee must have "engaged in activities within the coverage of the FLSA . . . ." *Heckmann Water*, 758 F.3d at 630. That means that the employee must not be "exempt" from FLSA coverage. Section 213 of the FLSA sets out the type of employees exempt from Section 207's overtime coverage, including those engaged in executive, administrative, professional, certain educational, or certain sales activities. 29 U.S.C. § 213(a)(1). Also exempted are employees engaged in certain specified occupations. *See* U.S.C. §§ 213(a), (b). Importantly, the Fifth Circuit has also recognized that "the employer bears the burden of providing that it qualifies for an exemption under the FLSA," that the employee performs exempted activities. *Singer v. City of Waco, Tex.*, 324 F.3d 813, 820 (5th Cir. 2003).

Plaintiffs have attested they served Samaripa as general laborers and sometimes work-site drivers, all on a straight hourly basis. (Dkt. 22). Neither of these activities are exempted under the FLSA. They are the activities for which plaintiffs seek overtime pay. (Dkt. 22). Further, Samaripa has offered the court no evidence that the tasks performed by plaintiffs lie outside the FLSA's scope and, accordingly, Samaripa fails to meet its burden. The court finds that plaintiffs have satisfied the second element of their case by showing that they seek overtime pay for activities covered by the FLSA.

## C. Samaripa's Violation of Overtime Requirements

Plaintiffs must next show that Samaripa "violated the FLSA's overtime wage requirements . . . ." *Heckmann Water*, 758 F.3d at 630. With respect to overtime pay, the FLSA requires employers to pay non-exempt employees "one and one-half times the regular

rate" for each hour worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). The court has already established that, as defendants' non-exempt employees, plaintiffs are entitled to protection of the FLSA and, accordingly, of Section 207(a)(1). Via affidavit, each of the plaintiffs attest that he worked in excess of forty hours a week for the weeks for which he seeks overtime pay. (Dkt. 22). Each plaintiff also attests that Samaripa failed to pay him overtime for this work. (Dkt. 22). That failure, again unchallenged by the defendants, constitutes a violation of FLSA Section 207. The court finds that plaintiffs have satisfied the third element of their FLSA claim.

D.   *Compensation Owed to Plaintiffs*

Finally, plaintiffs must show "the amount of overtime compensation due" to them by Samaripa. *Heckmann Water*, 758 F.3d at 630. Plaintiffs' support for their damages–the amount of overtime pay due–need not be "perfectly accurate," so long as it provides "a sufficient basis to calculate the number of hours worked by each employee." *Marshall v. Mammas Fried Chicken, Inc.*, 590 F.2d 598, 598 (5th Cir. 1979). The evidence must be sufficient "to show the amount and extent of that [overtime] work as a matter of just and reasonable inference." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). Since the case is at summary judgment, plaintiffs may argue their claim via affidavit. *Hairston*, 343 F.3d at 764 (courts consider "any affidavits filed in support of the motion" in summary judgment analysis).

In this case, plaintiffs state that on May 19, 2014, they sought "key information" from Samaripa, such as dates of employment and other details key in calculating overtime damages. (Dkts. 22, at 2; 22-2). Defendants did not respond despite plaintiffs' repeated requests, nor did defendants produce Ms. Samaripa for deposition. (Dkt. 22, at 2). Instead,

plaintiffs have provided via affidavit and their motion their estimates of damages, which, in light of defendants' failure to provide any relevant information, constitutes sufficient evidence to allow the court to calculate damages. (*See* Dkt. 22). Plaintiffs attest they each worked over forty hours in an average week during their engagement with Samaripa. (Dkt. 22). Their affidavits set out a method for calculating overtime. (*See* Dkt. 22). Accordingly, the court will properly rely on the estimates in these affidavits to calculate overtime pay.

In calculating overtime under the FLSA, an employee is entitled to one and one-half times the regular pay rate for each hour worked over forty hours per week. 29 U.S.C. § 207(a)(1). Where an employee works two different jobs, such as a laborer and driver, compensated at two different rates, courts calculate overtime compensation through use of a "weighted average" of the two. *See Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 476-77 (1948) (one and one-half times that averaged rate becomes the basis for calculating overtime pay). To obtain the weighted average rate, an employee's "total earnings . . . are computed to include his compensation during the workweek from all such rates, and then are divided by the total number of hours worked at all jobs." 29 C.F.R. § 778.115.

Joey Villarreal, according to his affidavit, worked for Samaripa for 48 weeks and was paid $18.00 per hour for labor work and $9.00 per hour for driving employees between remote work sites. (Dkt. 22-1). Joey Villarreal estimates that on average he spent 90 hours a week on labor work and 25 hours per week driving for Samaripa for a total of 115 hours per week, 75 of which constitute overtime under the FLSA. Because Joey Villarreal worked for Samaripa in two different capacities, the "weighted average" calculus applies to his claim. *See Bay Ridge*, 334 U.S. at 476-77. During an average week, Joey Villarreal earned $1,620 for labor and $225 for driving, for a total of $1,845 each week. That amount, divided

by 115 hours per week, means Joey Villarreal's weighted average rate of pay was $16.04. He is entitled to half that rate ($8.02) for the overtime pay owed him, which makes $601.50 the average weekly overtime pay for 75 hours. Accordingly, for the entire 48-week period, Samaripa owes Joey Villarreal $28,872 in overtime pay.

Pete Villarreal, according to his affidavit, worked for Samaripa for 43 weeks and was paid $17.00 per hour for labor work and $9.00 per hour for driving employees between remote work sites. (Dkt. 22-5). Pete Villarreal estimates that on average he spent 90 hours a week on labor work and 25 hours per week driving for Samaripa for a total of 115 hours per week, 75 of which constitute overtime under the FLSA. Because Pete Villarreal worked for Samaripa in two different capacities, the "weighted average" calculus applies to his claim. *See Bay Ridge*, 334 U.S. at 476-77. During an average week, Pete Villarreal earned $1,530 for labor and $225 for driving, for a total of $1,755 each week. That amount, divided by 115 hours per week, means Pete Villarreal's weighted average rate of pay was $15.26. He is entitled to half that rate ($7.63) for the overtime pay owed him, which makes $527.25 the average weekly overtime pay for 75 hours. Accordingly, for the entire 43-week period, Samaripo owes Pete Villarreal $24,606.75 in overtime pay.

Arnulfo Alejo, according to his affidavit, worked for Samaripa for 52 weeks and was paid $15.50 per hour for labor work and $9.00 per hour for driving employees between remote work sites. (Dkt. 22-6). Mr. Alejo estimates that on average he spent 70 hours a week on labor work and 10 hours per week driving for Samaripa for a total of 80 hours per week, 40 of which constitute overtime under the FLSA. Because Mr. Alejo worked for Samaripa in two different capacities, the "weighted average" calculus applies to his claim. *See Bay Ridge*, 334 U.S. at 476-77. During an average week, Mr. Alejo earned $1,085 for

9

labor and $90.00 for driving, for a total of $1,175 each week. That amount, divided by 80 hours per week, means Mr. Alejo's weighted average rate of pay was $14.69. He is entitled to half that rate ($7.34) for the overtime pay owed him, which makes $293.60 the average weekly overtime pay for 40 hours. Accordingly, for the entire 52-week period, Samaripa owes Mr. Alejo $15,267.20 in overtime pay.

Jose Luis Gomez, according to his affidavit, worked for Samaripa for 31 weeks and was paid $15.00 per hour for labor work and driving employees between remote work sites. (Dkt. 22-7). Mr. Gomez estimates that on average he spent 75 hours a week on labor work and 25 hours per week driving for Samaripa for a total of 100 hours per week, 60 of which constitute overtime under the FLSA. The weighted average calculus does not apply because Mr. Gomez was paid the same for each job. Because he received his straight pay for overtime hours, Mr. Gomez is entitled to half his regular rate ($7.50) for the 60 overtime hours worked, which comes to $450 for each of the 31 weeks he worked. Accordingly, Samaripa owes Mr. Gomez $13,950 in overtime pay.

Angel R. Bundali attests that he was both not paid overtime for his labor work and not paid at all for compensable driving work. (Dkt. 22, at 6). According to his affidavit, Mr. Bundali worked for Samaripa for 16 weeks and was paid $14.25 per hour for his work, which was mostly labor and averaged 70 hours per week, 30 of which constitute overtime under the FLSA. (Dkt. 22-8). For this time, Mr. Bundali received his straight hourly pay but no overtime. Accordingly, he is entitled to half his regular rate ($7.13) for overtime, totaling to $213.75 for 30 hours of overtime per average week. For the full sixteen weeks of Mr. Bundali's engagement, Samaripa owes him $3,422.40 in overtime pay for labor work. Mr. Bundali also worked as a driver for 16 hours per week on average and was not paid for this

time at all. Because this time is already in excess of the 40 hours per week that Mr. Bundali worked as a laborer, he is entitled to $342 per week of his engagement as one and one-half times his regular rate ($21.38) for 16 hours per week on average. Accordingly, Samaripa owes Mr. Bundali $5,472 for driving overtime, making $8,894.40 the total overtime pay to which Mr. Bundali is entitled.

Similarly, Marvin Aplicano states that he was not compensated for overtime labor work, nor was he paid for any time spent "traveling between the business and job sites during the week, even though it is compensable work." (Dkt. 22, at 7). According to his affidavit, Mr. Aplicano worked for Samaripa for 76 weeks and was paid $14.50 for his labor work, and averaged 90 hours per week, 50 of which constitute overtime under the FLSA. (Dkt. 22-9). For this time, Mr. Aplicano received his straight hourly pay but no overtime. Accordingly, he is entitled to half his regular rate ($7.25) for overtime, totaling to $362.50 for 50 hours of overtime per average week. For the full 76 weeks of Mr. Aplicano's engagement, Samaripa owes him $27,550 in overtime pay for labor work. Mr. Aplicano also claims that his 16 hours per week of on-job driving constitutes overtime for which he has received no pay. Because this time is already in excess of the 40 hours per week that Mr. Aplicano worked as a laborer, he is entitled to $348 per week of his engagement as one and one-half time his regular rate ($21.75) for 16 hours per week on average. Accordingly, Samaripa owes Mr. Aplicano $26,448 for driving overtime, making $53,998 the total overtime pay to which Mr. Aplicano is entitled.

Bobby Larios attests that he received his straight pay, but did not receive overtime compensation. (Dkt. 22-10). Mr. Larios worked two separate periods for Samaripa for a total of 71 weeks. He worked his first eight weeks at $14.00 per hour and worked an average

of 80 hours a week, of which 40 hours were overtime. Mr. Larios is entitled to $280 per week of this first period at half his regular rate ($7.00) for 40 hours of overtime per week on average. For the full eight weeks of this period, Samaripa owes Mr. Larios $2,240 in overtime pay. During the second period, which was for the remaining 63 weeks of his total engagement, Mr. Larios worked at $14.50 per hour and again for an average of 80 hours a week, of which 40 hours were overtime. For this period, Mr. Larios is entitled to $290 per week at half his regular rate ($7.25) for 40 hours of overtime per week on average. For this 63-week period, Samaripa owes Mr. Larios $18,270 in overtime pay. Accordingly, Samaripa owes Mr. Larios a total of $20,510 in overtime pay for the full length of his 71-week engagement.

Because plaintiffs have, through affidavit, given the court a sufficient basis to calculate overtime compensation and that basis has gone unchallenged by Samaripa, the court finds that plaintiffs have satisfied the fourth element of their FLSA claim.

*E.   Summary Judgment for Plaintiffs Is Proper*

Plaintiffs have satisfied each of the elements to establish a prima facie FLSA overtime case and have shown they are entitled to recovery. At this stage, the court would consider Samaripa's challenge to determine whether a genuine issue of material fact exists. *Heckmann Water*, 758 F.3d at 630. Because Samaripa has not filed any summary judgment materials, the record does not reflect any genuine issue of material fact, and plaintiffs are entitled to summary judgment.

*2.   Plaintiff Bobby Larios' Motion for Default Judgment*

In addition to summary judgment, plaintiff Bobby Larios moved for default judgment against defendants out of an "abundance of caution." (Dkt. 24, at 2). Because the

court has granted Mr. Larios' motion for summary judgment, his motion for default judgment is denied as moot.

*3.  Liquidated Damages and Attorney's Fees*

Plaintiffs also seek liquidated damages in addition to their actual overtime pay. (Dkts. 22, at 13-14; 24, at 4-5). Section 216(b) of the FLSA provides that an employer in violation of Section 207 for unpaid overtime compensation is liable to the employee for that compensation and for an "additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, if a court finds that the employer "acted in good faith and had reasonable grounds to believe that its actions complied with the FLSA," the court may choose not to award liquidated damages. *Black v. SettlePou, P.C.*, 732 F.3d 492, 501 (5th Cir. 2013) (quoting *Singer v. City of Waco*, 324 F.3d 813, 822-23 (5th Cir. 2003)). Because liquidated damages are prescribed as the norm by Section 216(b), the employer bears the "substantial burden" to demonstrate "good faith and a reasonable belief that its actions did not violate the FLSA." *Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 267 (5th Cir. 1998) (court still retains discretion to award liquidated damages even if employer shows good faith).

Liquidated damages—in an amount equal to the overtime pay owed plaintiffs—are appropriate in this case. The record does not reflect good faith by Samaripa, and Samaripa has made no effort to satisfy its "substantial burden" by demonstrating that it acted in good faith. *See id.* Accordingly, the court will adhere to Section 216(b) and award liquidated damages.

In addition, Section 216(b) requires "an employer who violates the statute . . . to pay attorney's fees." *SettlePou*, 732 F.3d at 502; 29 U.S.C. § 216(b). Having found that defendants violated Section 207, the court also awards plaintiffs' their reasonable attorney's

13

fees.

For the foregoing reasons, the court GRANTS plaintiffs' motion for summary judgment (Dkt. 22). The court awards plaintiffs actual and liquidated damages, payable by defendants Samaripa Oilfield Services, LLC and Amy Samaripa to each of the following plaintiffs in the following amounts[4]:

i. Joey Villarreal, in the amount of $57,744;

ii. Pete Villarreal, in the amount of $49,213.50;

iii. Arnulfo Alejo, in the amount of $30,534.40;

iv. Jose Luis Gomez, in the amount of $27,900;

v. Angel R. Bundali, in the amount of $17,788.80;

vi. Marvin Aplicano, in the amount of $107,996; and

vii. Bobby Larios, in the amount of $41,020.

The court also ORDERS defendants to pay plaintiffs their reasonable attorney's fees and costs. Plaintiffs' counsel is directed to submit appropriate affidavits documenting plaintiffs' fees and costs within 14 days of this Order.

Signed at Houston, Texas on December 30, 2014.

Stephen Wm. Smith
U.S. Magistrate Judge

---

[4] The court has calculated these damages by doubling the plaintiffs' actual damages (i.e., their overtime pay) to account for the additional liquidated damages.